IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PERRY MARQUELLE FORD,    *

    Plaintiff,    *

    v.    *    Civil Action No. DKC-22-717

WARDEN FREDERICK T. ABELLO, et al.,  *

    Defendants.    *
    ***

### MEMORANDUM OPINION

Self-represented Plaintiff, Perry Marquelle Ford, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1. Mr. Ford filed a court-directed Amended Complaint (ECF No. 4), naming as Defendants Frederick T. Abello, former Warden of Baltimore City Booking and Intake Center ("BCBIC"); Curtis Henson, former BCBIC Security Chief; and Isaias Tessema, M.D., his treating physician at BCBIC. Mr. Ford's Amended Complaint relates to his detention at BCBIC. ECF No. 4. Mr. Ford has since been released from custody. ECF No. 32.

Defendants Abello and Henson filed a motion to dismiss, which is pending. ECF No. 20. Mr. Ford filed a response in opposition to the motion to dismiss (ECF No. 23) and Defendants Abello and Henson replied. ECF No. 24. Defendants Abello and Henson filed a second Motion to Dismiss, arguing that the Amended Complaint should be dismissed due to Mr. Ford's failure to keep the court apprised of his current address. ECF No. 32. Service has not been effectuated on Defendant Tessema.

Having reviewed the submitted materials, the court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, Defendants' first motion to

dismiss (ECF No. 20) will be granted and the Amended Complaint dismissed as to Defendants Abello and Henson. Defendants' second motion to dismiss (ECF No. 32) will be denied.

## BACKGROUND

Mr. Ford filed a complaint in which he seeks damages.  He alleges that from October 29, 2021, through April 25, 2022, Dr. Tessema failed to provide him necessary prescription medication.  ECF No. 4 at 1.

Mr. Ford also alleges that on January 14, 2022, Chief Henson "and his team" stripped Mr. Ford in the presence of other detainees.  ECF No. 4 at 2.  Afterward, other inmates made comments to Mr. Ford about his body, which caused him emotional harm.  *Id*.  Mr. Ford complained about the incident to Warden Abello who assured Mr. Ford that corrective action would be taken, but nothing was ever done.  *Id*.

On an unspecified date, Mr. Ford told Warden Abello that he was attacked in his sleep by detainees who mistook him for someone else.  ECF No. 4 at 2.  The attack occurred on November 16, 2021.  *Id*.  Nothing was done as a result of Mr. Ford's complaints.  *Id*.

Mr. Ford was made to wait in the medical department for five hours on February 17, 2022, as he suffered an allergic reaction and was not provided any treatment.  ECF No. 4 at 2.  The following day, Mr. Ford was seen by a medical provider and told that he had an issue with black mold.  *Id*.

In his response to the Motion to Dismiss, Mr. Ford alleges additional claims for the first time.  He states that he sought help from Defendants Abello and Henson regarding the denial of prescribed medication.  ECF No. 23.  He also claims that he suffers from heart problems and that he sleeps with a breathing machine which his family tried to bring to him but it was not allowed.  *Id*.  Lastly, he asserts that he was not fed during the entire month of Ramadan and when he asked

why, he was told the "jail doesn't support Ramadan and because [he kept] filing grievances." *Id.* Briefs in opposition to a dispositive motion may not be used to amend a complaint or add new claims. *See Zachair Ltd. v. Driggs,* 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd* 141 F.3d 1162 (4th Cir. 1998); *Mylan Laboratories, Inc. v. Akzo, N. V.,*770 F. Supp. 1053, 1068 (D. Md. 1991), *aff'd,* 2 F.3d 56 (4th Cir. 1993).  The court therefore will not consider these additional allegations.

### STANDARD OF REVIEW

In reviewing the Amended Complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss.  *Id.* at 555.  Instead, "once a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

In their first motion to dismiss, Defendants Abello and Henson seek dismissal under Federal Rule of Civil Procedure 12(b)(6) arguing that: (1) the complaint fails to state a claim that Security Chief Henson's search of Mr. Ford violated his right to be free from an unreasonable search; and (2) the complaint fails to state a claim that Defendants Abello or Henson were deliberately indifferent to a risk of harm to Mr. Ford's safety in regard to the spontaneous attack by other inmates and as to his claim that he was denied medical care in response to an allergic reaction. In their second motion to dismiss, Defendants Abello and Henson seek dismissal pursuant to Local Rule 102.1.b.iii, which requires that Mr. Ford keep the court updated as to his current address.

### A.    Failure to State a Claim

This court is mindful of its obligation liberally to construe the pleadings of self-represented litigants, such as the instant complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In evaluating such a complaint, the factual allegations are assumed to be true.  *Id.* at 93 (citing

*Twombly*, 550 U.S. at 555-56).  Nonetheless, liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action does not satisfy Rule 8's basic pleading requirements.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Mr. Ford fails to allege facts to support his allegations.  The complaint as amended does not state a federal claim that may proceed as to Defendants Warden Abello and Security Chief Henson.

### B.    Strip Search

Strip searches of pretrial detainees implicate the Fourth and Fourteenth Amendments.  In *Florence v. Board of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318 (2012), the Supreme Court held that "every detainee who will be admitted to the general population [of a jail] may be required to undergo a close visual inspection while undressed," acknowledging that such blanket searches were not *per se* unreasonable, even where such searches extended to individuals arrested for minor offenses.  *Id.* at 322, 330-40.  Determining whether a particular strip search of a pretrial detainee is performed in an unreasonable manner "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).  However, the Supreme Court has expressed that:

> correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities.  The task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials.  This Court has repeated the admonition that, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these

considerations courts should ordinarily defer to their expert judgment in such matters.

*Florence*, 566 U.S. at 328 (internal citations and quotation marks omitted).

Given that strip searches of pretrial detainees prior to placing them in general population are not per se unconstitutional, the inquiry in the instant case is whether Mr. Ford has alleged sufficient detail to suggest that the challenged strip search was unreasonable. The only detail provided by Mr. Ford regarding the search is that it occurred in the presence of others.

Courts have recognized that needless exposure of inmates to others, particularly others of the opposite sex, during a strip search can violate the Fourth Amendment. *See Harris v. Miller*, 818 F.3d 49, 58-59 (2d Cir. 2016) (involving visual inspection of female inmate's genitalia by male officer): *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995) (involving body cavity search of male inmate in view of female officials and staff); *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981) (involving the forcible removal of female inmate's underwear in presence of male guards). However, a group strip search prior to commitment to a city jail which served the jail's need efficiently to search groups of incoming detainees did not constitute an unreasonable search under the Fourth Amendment. *Williams v. City of Cleveland*, 907 F. 3d 924, 936 (6th Cir. 2018); *see also Bell*, 441 U.S at 559 (determination of whether a particular search violates the Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted").

Here, Mr. Ford does not provide any details regarding the search. He does not specify if people of the opposite sex were present during the search, where or when the search occurred, the duration of the search, or the extent of the search. In sum, the fact that Mr. Ford was subject to a

strip search in front of others as a pretrial detainee is not per se unconstitutional.  Further, the information that Mr. Ford has provided in support of his claim is insufficient to suggest that the search was unconstitutional in the instant case.  Because the sparse details that Mr. Ford provides "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' —'that [Mr. Ford] is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  This claim will be dismissed.

### C.   Indifference to Risk of Harm

Mr. Ford was a pretrial detainee at the relevant time.  Generously construed, his Amended Complaint asserts that Defendants Warden Abello and Chief of Security Henson failed to protect him from harm when he was attacked by other inmates and that he was forced to wait for hours before receiving medical care for an allergic reaction. ECF No. 4.

Pretrial detainees "retain at least those constitutional rights [held] by convicted prisoners." *Bell* 441 U.S. at 545; *see also Patten v. Nichols,* 274 F.3d 829, 834 (4th Cir. 2001).  A pretrial detainee's claim of cruel and unusual punishment arises under the Fourteenth Amendment, but courts "have traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference . . ." *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021).

A pretrial detainee's failure to protect claim as well as a claim of denial of medical care are analyzed under the Fourteenth Amendment and the two-part inquiry established in *Farmer v. Brennan*, 511 U.S. 825 (1994).  *Brown v. Harris*, 240 F.3d 383, 388-90 (4th Cir. 2001) (applying *Farmer* to a pretrial detainee's failure to protect and medical claims).  In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failure to protect inmates from attack, inhumane conditions of confinement, and failure

to render medical assistance. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Hixson v. Moran*, 1 F. 4th 297, 302 (4th Cir. 2021); *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017). The deliberate indifference standard is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

"For a claim based on a failure to prevent harm, a person must show that he is being detained, or incarcerated 'under conditions posing a substantial risk of serious harm.'" *See Brown*, 240 F.3d at 389 (quoting *Farmer*, 511 U.S. at 834). Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014) (internal quotation marks omitted). The objective inquiry requires this court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

A plaintiff must also establish that the prison official involved had "a sufficiently culpable state of mind," which, in this context, "is one of deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted). This subjective inquiry requires evidence that the official had actual knowledge of an excessive risk to the prisoner's safety—"the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference." *Id.* at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence,'" and "'a factfinder may conclude that a prison official

8

knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842).

Here, Mr. Ford does not allege that Warden Abello or Chief of Security Henson were aware that he was at a risk of harm from other detainees.  Mr. Ford alleges that he was spontaneously attacked by other detainees who mistook him for someone else.  There is no allegation that either Warden Abello or Chief of Security Henson were aware of the risk of the attack and failed to take any action.  Rather, Mr. Ford alleges that after the attack he advised the Warden of the event and was assured that corrective action would be taken.  Mr. Ford does not explain what that corrective action would be and most importantly he fails to allege that without the corrective action he remained at risk of harm.  As such, Defendants Abello and Henson are entitled to dismissal.

Similarly, Mr. Ford's claim regarding denial of medical care cannot proceed as to Defendants Abello and Henson.  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure it was available.  *See Farmer*, 511 U.S. at 834-7 (1994).  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'"  *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Assuming, without deciding, that Mr. Ford's allergic reaction constituted a serious medical need, Mr. Ford fails to allege that Warden Abello or Security Chief Henson were aware that he suffered an allergic reaction and/or that he was made to wait several hours to receive medical care. Without the allegation that either Defendant Warden Abello or Chief of Security Henson were

aware that Mr. Ford required medical attention and failed to take correction action, this claim cannot proceed and Defendants Warden Abello and Security Chief Henson are entitled to dismissal.

### D.      Failure to Comply with Local Rule 102.1.b.iii

Defendants Abello and Henson also seek dismissal of the Amended Complaint due to Mr. Ford's failure to keep the court apprised of his current address pursuant to Local Rule 102.1.b.iii. ECF No. 32.  However, in his motion for leave to proceed *in forma pauperis*, filed on March 24, 2022, Mr. Ford provided the following  address: 1011 15th Street, S.E., Washington, DC 20003. ECF No. –5.  While the court's docket did not reflect that address, Defendant Abello and Henson's Motion to Dismiss (ECF No. 20) was mailed to Mr. Ford at that address and he filed a response in opposition.  ECF No. 23.   Later papers mailed by the court to other addresses have been returned as undeliverable and some have them have now been remailed to the 15th Street address, presumably Mr. Ford's permanent address.  Accordingly, it appears that Mr. Ford could not have known that the court was not aware of his release and the need to use his permanent address because Defendants sent their first motion to him there.  In the future, he will need to notify the court if his address changes.   The Clerk is directed to amend the docket to reflect the proper address for Mr. Ford.  The second motion to dismiss will be denied.

### CONCLUSION

By separate Order that follows, the Motion to Dismiss filed by Defendants Warden Abello and Chief of Security Henson will be granted and the Amended Complaint dismissed as to these defendants for failure to state a claim.

August 16, 2023                                        _____/s/_____
                                                                    DEBORAH K. CHASANOW
                                                                    United States District Judge